1

2

3

4

5

6

7                     IN THE UNITED STATES DISTRICT COURT

8                   FOR THE EASTERN DISTRICT OF CALIFORNIA

9    WILLIAM BARKER,

10              Plaintiff,              No. CIV S-11-0246 LKK GGH P
          vs.
11

12                                      ORDER &
     R. YASSINE,
13              Defendant.              FINDINGS AND RECOMMENDATIONS

14   _____/

15   Introduction

16              Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.  Pending before the court is defendant's July 27, 2011, motion to dismiss

18   pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that plaintiff's state law claims are barred for

19   failure to timely comply with the California Torts Claims Act, and defendant argues that

20   plaintiff's Americans with Disabilities Act (ADA) claim fails to meet all the elements for such a

21   claim.  After several extensions, plaintiff filed an opposition on November 14, 2011, and

22   defendant filed a reply on November 22, 2011.  Also pending is a request for an attorney to

23   substitute in as counsel for plaintiff, filed on December 8, 2011, that includes a new opposition to

24   the motion to dismiss and a proposed amended complaint.

25   \\\\\

26   \\\\\

                                          1

Background

   Plaintiff alleges that he is a disabled prisoner with hip, spine and shoulder injuries. On October 25, 2009, plaintiff was in his wheelchair when he was headed to the medical unit for routine treatment.  When plaintiff approached the gate, the sole defendant in this case, Yassine, a guard, stated he was going to search plaintiff.  As Yassine searched plaintiff in the wheelchair, he told plaintiff to lean forward and plaintiff complied.  Yassine then allegedly pushed plaintiff forward even more until there was a loud pop and plaintiff cried out in pain and then later had to be treated for the injury.

   On July 27, 2011, defendant filed an answer to the complaint and the instant motion to dismiss several of the claims in the complaint.  A discovery and scheduling order was issued by the court on August 23, 2011, and discovery has recently concluded.

   During the course of this litigation plaintiff has repeatedly requested the appointment of a specific attorney.  Due to the simple and straightforward nature of plaintiff's claims, the request for the court to appoint the attorney has been denied, but plaintiff and the attorney have been informed that the attorney is of course able to represent plaintiff and substitute in as counsel.  Apparently, counsel did not want to accept the case but did request to be appointed for the limited purpose of representing plaintiff at a deposition, so on October 26, 2011, the court appointed the attorney for the limited purpose of representing plaintiff at the deposition.

   Plaintiff, after receiving several extensions, filed an opposition to the motion to dismiss on November 14, 2011, defendant filed a reply on November 22, 2011, and the motion was fully submitted.  Counsel has now filed a substitution of attorney along with a proposed additional opposition to the motion to dismiss and a proposed amended complaint.  Docket # 52 (attachments).  However, there has been no motion seeking leave to file an additional opposition or an amended complaint.  As already stated, the complaint has been answered, discovery has finished, and the motion to dismiss has been fully briefed.  A substitution of attorney does not

automatically entitle the new attorney to file whatever that attorney deems to have been deficiently filed in the past.[1]  If counsel had properly requested to file new pleadings and an opposition, such a request would have been seriously considered, but simply filing an additional opposition and an amended complaint does not ensure that they will be accepted by the court.[2] However, despite being in violation of the Federal Rules of Civil Procedure, and out of an abundance of caution, the undersigned will consider the additional opposition and analyze the amended complaint.

Motion to Dismiss

> Legal Standard

In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007).  "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.

---

[1] Nor does counsel indicate why he refused to accept the case over the past six months, but finally agreed to represent plaintiff after the motion to dismiss had been fully briefed.

[2] Plaintiff has no right to amend his complaint as of right at this time as he has served it more than 21 days after the filing of the motion to dismiss and answer.  Fed. R. Civ. P. 15(a)(1)(B).

1  Ct. 1848 (1976), construe the pleading in the light most favorable to the party opposing the

2  motion and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421,

3  89 S. Ct. 1843, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969).  The court will "'presume that

4  general allegations embrace those specific facts that are necessary to support the claim.'"

5  National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798 (1994),

6  quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130 (1992).  Moreover,

7  pro se pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v.

8  Kerner, 404 U.S. 519, 520, 92 S. Ct. 594 (1972).

9                    State Claims

10            Rather than move substantively on the above claims for failure to state a claim on

11  the merits, defendant correctly moves on a universal basis to dismiss all state claims on the basis

12  of failure to properly comply with the California Torts Claims Act ("GCA").[3]  Those claims are

13  as follows:

14  1. Cal. Civil Code § 1714 - liability for willful or negligent acts;

15  2. Cal. Govt. Code § 820.2 - non-liability for a public employee's discretionary acts;

16  3. Cal. Govt. Code § 11135 - non-discrimination (includes disability)[4];

17  ──────────────

18      [3] In 2007, the California Supreme Court adopted the practice of using the title "Government Claims Act" instead of "California Tort Claims Act."  See City of Stockton v.

19  Superior Court, 42 Cal. 4th 730, 741-42 (2007).

20      [4] The Unruh Civil Rights Act provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal

21  accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ.Code § 51(b).  Generally, to prevail on his disability

22  discrimination claim under the Unruh Civil Rights Act, plaintiff must establish that: (1) he was denied the full and equal accommodations, advantages, facilities, privileges, or services in a

23  business establishment; (2) his disability was a motivating factor for the denial; (3) the defendant denied plaintiff the full and equal accommodations, advantages, facilities, privileges, or services;

24  and (4) the defendant's wrongful conduct caused plaintiff to suffer injury, damage, loss, or harm.  See Cal. Civil Jury Instructions (BAJI), No. 7.92 (Spring 2011 ed.).

25

26      California's Disabled Person Act (CDPA) found in Section 54(a) of the California Civil Code provides that individuals with disabilities or medical conditions have the same right as the

1    4. Cal Govt Code § 12921 - employment and housing discrimination;

2    5. Cal. Penal Code § 2652 - criminal mistreatment of prisoners;

3    6. Cal. Penal Code 147 - criminal mistreatment of prisoners.

4         With certain exceptions, none of which are relevant here, one who sues a public

5    employee on the basis of acts or omissions in the scope of the employee's employment must file

6    a claim against the public-entity employer under the claims filing procedures of the GCA, as a

7    precondition to bringing suit.  Briggs v. Lawrence, 230 Cal.App.3d 605, 613 (1991); see also

8    Govt.Code, §§ 950.2, 950.6, subd. (a).  "The legislature's intent to require the presentation of

9    claims before suit is filed could not be clearer."  City of Stockton v. Super. Ct., 42 Cal. 4th 730,

10   746 (2007) ("The purpose of providing public entities with sufficient information to investigate

11   claims without the expense of litigation is not served if the entity must file a responsive pleading

12   alerting its opponent to the claim requirements.").  Thus, when a plaintiff asserts a claim subject

13   to the GCA, he must affirmatively allege compliance with the claim presentation procedure, or

14   circumstances excusing such compliance, in his complaint.  The requirement that a plaintiff

15   asserting claims subject to the GCA must affirmatively allege compliance with the claims filing

16   requirement applies in federal court as well.  Karim-Panahi v. Los Angeles Police Dep't, 839

17   F.2d 621, 627 (9th Cir. 1988).

18        "A claim relating to a cause of action for death or for injury to person or to

19   personal property ... shall be presented ... not later than six months after the accrual of the cause

20   of action."  Cal. Gov't. Code § 911.2(a).  When a claim is not presented within that time, "a

21   written application may be made to the public entity for leave to present that claim."  Cal. Gov't.

22   Code § 911.4(a).  The application must be presented to the public entity within a reasonable time

23   not to exceed one year after the accrual of the cause of action and must state the reason for the

24   _____

25   general public to the full and free use of the streets, highways, sidewalks, walkways, public
     buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities,
     and other public places.  Section 54.1(a)(1) states in part that individuals with disabilities shall be
26   entitled to full and equal access, as other members of the general public.

1  delay in presenting the claim.  Cal. Gov't. Code § 911.4(b).  Failure to present a timely claim

2  against the public employee bars a subsequent civil action for damages against the public

3  employee.  See State v. Superior Ct. ex rel. Bodde, 32 Cal.4th 1234, 1237, 1239, 13 Cal.Rptr.3d

4  534 (2004); Padula v. Morris, 2008 WL 1970331, at *5 (E.D. Cal. May 2, 2008).

5         The incident in the instant case occurred on October 25, 2009.  Plaintiff failed to

6  file a claim within six months or permission to present a late claim within one year.  Plaintiff did

7  file a GCA claim that also sought permission to file a late claim which was received on

8  December 27, 2010, however this was beyond the one year period.  Comp. at 34-37.[5]  As a result,

9  the GCA has no record that plaintiff filed a proper and timely claim.  See Declaration, Doc. 26.

10        Plaintiff argues that he should receive equitable tolling due to his second grade

11  education, physical disability, and his placement in Administrative Segregation.  Other than these

12  general statements, plaintiff provides no specific arguments.  Plaintiff does not state when he was

13  placed in Administrative Segregation nor does he describe how his physical disability or

14  education prevented him from timely filing a claim.  In addition, despite all these challenges,

15  plaintiff was able to properly file inmate appeals regarding this incident in a timely manner

16  during the same time period, yet was somehow unable to properly file a tort claim.  As a result,

17  plaintiff's argument for equitable tolling should fail and the state law claims in this action should

18  be dismissed.  The additional opposition filed by counsel states that plaintiff was in

19  Administrative Segregation, but also fails to say how long plaintiff was in custody there or how

20  this prevented him from timely filing a claim, if at all.

21        Plaintiff (through counsel's unauthorized and belated filing, see Exhibit A to

22  Docket # 52) then argues that no state administrative claim filing was necessary because the

23  ADA preempts state filing requirements, citing inter alia Hubbard v. SoBreck, LLC, 554 F.3d

24  742 (9th Cir. 2009), and O'Campo v. Chico Mall LP, 758 F. Supp. 2d 976, 984-85 (E.D. Cal.

25

26        [5] The claim was dated November 5, 2010, but there is no indication when it was actually sent, and regardless, that is still beyond the one year term.

1  2010) (Karlton J.)   Plaintiff, however, misses the point of those cases.   While it is correct to

2  assert that the ADA, by virtue of being a federal claim, does not require a GCA administrative

3  claim, even though this federal claim is brought against state agencies, this undoubtedly correct

4  proposition says nothing about the requirement to file state administrative claims for *state law*

5  *based claims.*   Hubbard involved a situation where both a federal ADA and state CDPA

6  (California Disabled Persons Act) attorneys' fees provisions conflicted.   In a situation where both

7  claims were brought in federal court, the ADA was held to preempt the more defendant friendly

8  CDPA provisions.   Plaintiff's counsel takes that correct proposition and applies it to a situation

9  where the federal ADA has no exhaustion provisions to conflict with state requirements.

10  Plaintiff argues, without authority, that the general federal requirement in PLRA litigation

11  (prisoner must exhaust remedies within the prison) has somehow been engrafted onto the ADA,

12  and therefore, the newly found ADA "exhaustion provision"  "conflicts" with GCA filing

13  requirements.   However, the premise that the ADA contains an exhaustion provision, which it

14  does not, is incorrect.   Prisoner litigation requires PLRA exhaustion no matter the claim – and

15  that requirement has nothing to do with whether the ADA itself has an exhaustion requirement.

16         Plaintiff might argue, which he does not, that the fact that the ADA does not have

17  an exhaustion provision conflicts with a state law claim that does.   However, that would be

18  taking Hubbard too far. The mere silence of the ADA with respect to *federal* exhaustion cannot

19  be found to demonstrate the Congressional intent to preclude state requirements for exhaustion of

20  state claims.   Silence is quite different from the Hubbard situation where attorneys' fees for an

21  entire litigation were at issue, and the ADA and state law had conflicting standards for those

22  singular fees.   "As is always the case in our preemption jurisprudence, where 'federal law is said

23  to bar state action in fields of traditional state regulation, ... we have worked on the "assumption

24  that the historic police powers of the States were not to be superseded by the Federal Act unless

25  that was the clear and manifest purpose of Congress." ' " California Div. of Labor Standards

26  Enforcement v. Dillingham Constr. N. A., Inc., 519 U.S. 316, 325, 117 S.Ct. 832 (1997)

1   (citations omitted).  See also, Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146

2   (1947).  Moreover, the situation here is no different from any other federal claim which does not

3   itself require exhaustion, e.g. 42 U.S.C. § 1983 et seq, but filing a GCA claim for allied *state* law

4   claims is routinely upheld.  Karim-Panahi, supra.

5        Further, the O'Campo case does not aid plaintiff.  "The Act [state law] is

6   preempted to the extent that it imposes any additional procedural hurdles to a plaintiff *bringing a*

7   *claim under the ADA*."  O'Campo, 758 F. Supp. 2d at 984.  The case did not hold that mandatory

8   requirements for bringing state claims, unrelated to one's ability to proceed under the ADA, were

9   unenforceable.

10       In sum, nothing in the ADA precludes the states from requiring administrative

11  compliance with certain procedures for its *state claims*, whether those claims be tightly or loosely

12  modeled on the ADA.  For example, in the proposed amended complaint, plaintiff wishes to

13  bring a state claim under the Unruh Act, yet if the undersigned were to allow this new claim to

14  momentarily proceed, it would also be foreclosed for failure to comply with the GCA.  See Gatto

15  v. County of Sonoma, 98 Cal. App. 4th 744, 763 (2002).  The CDPA claim would share the same

16  fate.

17       Thus, the failure to file timely state GCA administrative claims requires dismissal

18  *not* of the ADA claim, but only of all *state law based claims*.  As will be discussed below,

19  plaintiff's ADA claim should not be dismissed because a state administrative claim was not filed,

20  but because plaintiff does not meet the elements for such a claim under federal law.

21       ADA Disability Claims

22       Title II of the ADA "prohibit[s] discrimination on the basis of disability."  Lovell

23  v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).  Title II provides that "no qualified individual

24  with a disability shall, by reason of such disability, be excluded from participation in or be denied

25  the benefits of the services, programs, or activities of a public entity, or be subject to

26  discrimination by such entity."  42 U.S.C. § 12132.  Title II of the ADA applies to inmates within

state prisons.  Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 118 S.Ct. 1952, 1955 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997); Duffy v. Riveland, 98 F.3d 447, 453-56 (9th Cir. 1996).

In order to state a claim that a public program or service violated Title II of the ADA, a plaintiff must show: he is a "qualified individual with a disability"; he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and such exclusion, denial of benefits, or discrimination was by reason of his disability.  McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004).

Even liberally construing the allegations in the complaint, plaintiff has failed to set forth a viable ADA claim.  Plaintiff argues that defendant was attempting to stop him from his regularly scheduled medical appointment and was thus denying him prison services due to his disability.  However, the only facts alleged in the complaint are that the defendant asked plaintiff where he was going and then why he was going to the clinic and plaintiff felt harassed and told defendant that defendant was not there to treat plaintiff's medical condition and the information defendant requested was protected by law.  It was then that defendant allegedly became upset and insisted on searching plaintiff.

There is no indication plaintiff was searched because of his disability nor does it appear that defendant was preventing plaintiff from reaching the clinic, just insisting that he be searched.  Based on plaintiff's allegations, defendant was in a spite contest with plaintiff because of plaintiff's comments, and while defendant may have overstepped the normal search protocol, there is no indication that defendant acted based on plaintiff's disability.  While plaintiff has made sufficient allegations that the defendant violated his Eighth Amendment rights through the use of excessive force, the underlying facts do not support an ADA claim.  Plaintiff's attempt to turn a straightforward Eighth Amendment claim into an ADA claim should fail, as plaintiff's arguments would support a theory that any constitutional violation alleged by a prisoner would

1    also be an ADA claim if the plaintiff alleges a disability.[6]

2              Plaintiff's counsel understands this, as he has changed theories in the belated

3    opposition.  The additional opposition argues that plaintiff's ADA rights were violated as

4    plaintiff was searched while seated in his wheelchair, not the ADA compliant bench that was

5    nearby and plaintiff was thus "excluded from a service," to wit the bench.  This allegation is

6    frivolous; the functional difference between plaintiff being seated in his wheelchair as opposed to

7    a bench when he is being allegedly, improperly searched is meaningless.  Nor is there any

8    indication in the original complaint or proposed amended complaint that plaintiff requested use

9    of the bench.  Indeed, plaintiff would have to have left his wheel chair to struggle up to the bench

10   in order to be searched under counsel's theory.  The physical act of plaintiff moving from his

11   wheelchair to the bench, and then back to the wheelchair could also potentially lead to a  injury,

12   especially in light of the extensive injuries plaintiff states he suffers from at the time of the

13   search.  Plaintiff's strained, belated theory cannot possibly implicate the denial of an ADA

14   accommodation.  See Knapp v. Cate, 2011 WL 5416342 *4 (E.D. Cal. 2011) (being denied

15   single cell status after being found medically stable does not violate the ADA).

16             Moreover, there is no practical point to the ADA claim.  Plaintiff has not sued a

17   state entity, the only viable defendant for an ADA claim.  Even if an ordinary prison guard sued

18   in official capacity could be recognized as a suit against the state for ADA purposes (doubtful),

19   plaintiff gains nothing by having a parallel ADA claim because both the Eighth Amendment and

20   the ADA (Title II claim) require deliberate indifference to obtain damages.  See Duvall v. County

21   of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001).  "Deliberate indifference requires both

22   knowledge that a harm to a federally protected right is substantially likely, and a failure to act

23   upon that likelihood."  Id. at 1139.  To the extent that it is deliberately indifferent to search a

24

25             [6] While denying plaintiff access to the clinic could be a separate Eighth Amendment
     claim for deliberate indifference to serious medical needs, there was no separate injury alleged
26   from plaintiff not immediately being able to access the clinic.

1  prisoner in a wheel chair, as opposed to having the disabled prisoner haul himself up to a nearby

2  bench for a search, that theory remains in the Eighth Amendment claim.

3          Accordingly, IT IS HEREBY ORDERED that:

4          1.  Scottlyn J. Hubbard is substituted as the attorney of record for plaintiff; and

5          2.  The amended complaint will be disregarded for the reasons set forth above.

6          IT IS HEREBY RECOMMENDED that defendant's motion to dismiss (Docket

7  #25) be granted in its entirely and the state law and ADA claims be dismissed.  The case will

8  continue solely on the Eighth Amendment claim of excessive force.

9          These findings and recommendations are submitted to the United States District

10 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

11 days after being served with these findings and recommendations, any party may file written

12 objections with the court and serve a copy on all parties.  Such a document should be captioned

13 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

14 shall be served and filed within seven days after service of the objections.  The parties are

15 advised that failure to file objections within the specified time may waive the right to appeal the

16 District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

17 DATED: January 5, 2012

18                                    /s/ Gregory G. Hollows
                                     UNITED STATES MAGISTRATE JUDGE
19
   GGH: AB
20 bark0246.mtd

21

22

23

24

25

26

11