IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM BARKER,

       Plaintiff,                No. CIV S-11-0246 LKK GGH P

   vs.

R. YASSINE,                       ORDER ON RECONSIDERATION BEFORE
                                   THE MAGISTRATE JUDGE[1]
       Defendant.

_____/

Introduction

        A partial motion to dismiss was filed on July 27, 2011 seeking dismissal of state law claims and one pursuant to the Americans with Disabilities Act (ADA), but not on the Eighth Amendment excessive force claim. When the motion was filed, as well as when the opposition and reply were filed, plaintiff was appearing *pro se*. The matter was submitted when the reply was filed on November 22, 2011. On December 8, 2011, attorneys Lynn Hubbard III, and Scottlyn Hubbard requested to be substituted into the case for purposes of representing plaintiff. Within the substitution request was a subsidiary request to permit an amended complaint to be

---

[1] A separate motion for summary judgment (Doc. 56) with respect to the Eighth Amendment claim was filed by defendant, which the undersigned will address in a separate findings and recommendations.

filed in the case in lieu of the complaint originally filed, and an additional opposition to the motion to dismiss.

The undersigned filed an Order/Findings and Recommendation on defendant's motion to dismiss the complaint on January 6, 2012.  Within the Order etc., the undersigned determined that the attorneys would be substituted in, and that the informal request to amend the complaint, as well as the additional, improperly filed opposition, would be considered "in an abundance of caution."  The undersigned recommended that the claims based on state law be dismissed on account of not filing a "GCA" state administrative tort claim, and the ADA claim be dismissed without leave to amend for failure to state a claim.

Counsel filed a motion for reconsideration directed *to the magistrate judge* on February 1, 2012.  The motion was brought on only two grounds:

(1)  The time for filing of a timely GCA claim should have been equitably tolled[2];

(2)  The ADA claim was improperly dismissed.

The undersigned determined to hear the reconsideration in court, and did so on March 15, 2012. For the reasons set forth below, plaintiff's motion for reconsideration is granted, but upon reconsideration, the undersigned affirms his initial Findings and Recommendations.

Factual Background

The undersigned will concisely present the factual background for purposes of the reconsideration motion.  Plaintiff is a state prisoner proceeding with retained counsel with a civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff alleges that he is a disabled prisoner with hip, spine and shoulder injuries.  On October 25, 2009, plaintiff was in his wheelchair when he was headed to the medical unit for routine treatment.[3]  When plaintiff approached a gate, the sole

---

[2] Counsel disagreed with the undersigned's analysis that a GCA claim was necessary, but correctly did not believe it appropriate to rehash that issue in a motion for reconsideration.

[3] Plaintiff does not require a wheelchair full-time, but is provided one when he is outside of his cell.  Amended Complaint at 2.

defendant in this case, Yassine, a correctional officer, and plaintiff got in an argument concerning Yassine's questioning about plaintiff's reasons for going to the clinic. In this "attitude" contest, Yassine stated he was going to search plaintiff. As Yassine searched plaintiff in the wheelchair, he told plaintiff to lean forward and plaintiff complied. Yassine then allegedly pushed plaintiff forward even more until there was a loud pop and plaintiff cried out in pain and then later had to be treated for the injury. Plaintiff first alleges that Yassine acted out of spite and used excessive force in the search, i.e., acted maliciously and sadistically for the very purpose of causing harm. He then alleges in the alternative that the search violated the ADA, i.e., that the search was performed in violation of the ADA as well as state law ADA type claims.[4]

Motion for Reconsideration

Although motions to reconsider are directed to the sound discretion of the court, Frito-Lay of Puerto Rico, Inc. v. Canas, 92 F.R.D. 384, 390 (D.C. Puerto Rico 1981), considerations of judicial economy weigh heavily in the process. Thus Local Rule 230(j) requires that a party seeking reconsideration of a district court's order must brief the "new or different facts or circumstances [which] were not shown upon such prior motion, or what other grounds exist for the motion." The rule derives from the "law of the case" doctrine which provides that the decisions on legal issues made in a case "should be followed unless there is substantially different evidence . . . new controlling authority, or the prior decision was clearly erroneous and would result in injustice." Handi Investment Co. v. Mobil Oil Corp., 653 F.2d 391, 392 (9th Cir. 1981); see also Waggoner v. Dallaire, 767 F.2d 589, 593 (9th Cir. 1985), cert. denied, 475 U.S. 1064 (1986).

Courts construing Federal Rule of Civil Procedure 59(e), providing for the alteration or amendment of a judgment, have noted that a motion to reconsider is not a vehicle

---

[4] The deliberate indifference standard is applicable to damages for claims made pursuant to Title II of the ADA. Duvall v. County of Kitsap, 260 F.3d 1124, __ (9th Cir. 2001). Plaintiff has made no claim for injunctive relief.

permitting the unsuccessful party to "rehash" arguments previously presented, or to present "contentions which might have been raised prior to the challenged judgment." Costello v. United States, 765 F.Supp. 1003, 1009 (C.D. Cal. 1991); see also F.D.I.C. v. Meyer, 781 F.2d 1260, 1268 (7th Cir. 1986); Keyes v. National R.R. Passenger Corp., 766 F. Supp. 277, 280 (E.D. Pa. 1991). These holdings "reflect[] district courts' concerns for preserving dwindling resources and promoting judicial efficiency." Costello, 765 F.Supp. at 1009.

Dismissl of State Law Claims and Equitable Tolling

The incident in the instant case occurred on October 25, 2009. Plaintiff failed to file a claim within six months allowed by the GCA or permission to present a late claim within one year as allowed by the GCA. Plaintiff did file a GCA claim that also sought permission to file a late claim which was received on December 27, 2010, however this was beyond both limitation periods.

In plaintiff's amended opposition to the motion to dismiss (filed by counsel), he stated that he missed the deadline to file a claim with the GCA because he was in Administrative Segregation (Ad. Seg.), had a second grade reading level and it took him a while to obtain the help of another inmate.[5] The undersigned stated the following in the January 6, 2012, findings and recommendations:

> Plaintiff argues that he should receive equitable tolling due to his second grade education, physical disability, and his placement in Administrative Segregation. Other than these general statements, plaintiff provides no specific arguments. Plaintiff does not state when he was placed in Administrative Segregation nor does he describe how his physical disability or education prevented him from timely filing a claim. In addition, despite all these challenges, plaintiff was able to properly file inmate appeals regarding this incident in a timely manner during the same time period, yet was somehow unable to properly file a tort claim. As a

---

[5] Plaintiff also states his failure to timely file a claim with the GCA is excused by Cal. Gov't Code § 945.6(b). However 945.6(b) involves filing a suit in court after filing the GCA. The instant case involves the actual filing of the GCA administrative claim and the pertinent sections of California Code were set forth in the findings and recommendations. See also Cal. Gov't. Code 945.6(c). In any event, plaintiff is not one who has been unable to file suit in court. The archaic and repealed-by-implication nature of this statutory sub-section was noted in Moore v. Twomey, 120 Cal. App. 4th 910, 914 n.2 (2004).

4

> result, plaintiff's argument for equitable tolling should fail and the state law claims in this action should be dismissed. The additional opposition filed by counsel states that plaintiff was in Administrative Segregation, but also fails to say how long plaintiff was in custody there or how this prevented him from timely filing a claim, if at all.

Doc. 53 at 6.

In plaintiff's motion for reconsideration he states regarding equitable tolling, for the first time, that plaintiff has a second grade education which is the result of a "bat" related assault that plaintiff suffered as a youth that resulted in brain damage. Plaintiff now states he cannot read or write and has serious memory problems. Doc. 54 at 3. Other than these belated statements, plaintiff does not advance any legal argument as to why these asserted deficiencies should result in equitable tolling of a non-habeas civil action as many inmates in prison do not read or write well, or even speak English. See Comite etc. v. City of Redondo Beach, 657 F.3d 936, 947 (n.6) (9th Cir. 2011) ("'bare assertion does not preserve a claim'"). Nor does plaintiff explain how his difficulties prevented him from timely complying with the GCA, even though plaintiff was able to properly exhaust using the inmate appeals system and despite the undersigned stating that more specific information would be required. But even if the undersigned goes further, no equitable tolling is warranted.

In Addison v. State of California, 21 Cal.3d 313 (1978), the California Supreme Court held that the statute of limitations for filing a governmental tort claim was equitably tolled when plaintiff initially filed his action in federal court. The purpose of the doctrine, the court observed, "is to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court." Id. at 316. Recognizing the principal goal of statutes of limitation as preventing the assertion of stale claims, the court affirmed the "general policy which favors relieving plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage." Id. at 317 (citations omitted).

\\\\\

In Collier v. City of Pasadena, 142 Cal.App.3d 917 (1983), the court of appeal later explained the equitable tolling doctrine in greater detail. The court quoted Addison: "Justice Richardson's words ... have created a definitive three-pronged test for invocation of this doctrine." Id. at 924. Tolling is appropriate where the record shows "(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and, (3) good faith and reasonable conduct by the plaintiff in filing the second claim." Id. Essentially, the doctrine applies " '[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one.' " Elkins v. Derby, 12 Cal.3d 410, 414 (1974), quoting Myers v. County of Orange, 6 Cal. App.3d 626, 634 (1970).

While equitable tolling could be available had plaintiff filed suit in state court or this court prior to filing with the GCA, that is not the case in the instant action as plaintiff never filed an action in court until well after both the six months allowed by the GCA or the one year allowed by the GCA to present a late claim. To the extent that plaintiff could in the future argue that exhausting inmate appeals to file a § 1983 claim should lead to tolling, any such argument should be denied. The undersigned is not aware of any case law that exhausting inmate appeals could toll the time limit to file a claim with the GCA, nor has plaintiff, despite several filings and opportunities, even presented that argument.

Even assuming for sake of argument, that plaintiff received tolling while he exhausted the appeals process in this case, he is still beyond the time limit set forth by the GCA. The incident occurred on October 25, 2009, and plaintiff filed his first level inmate appeal on November 9, 2009, and the appeal process was completed on March 16, 2010. "A claim relating to a cause of action for death or for injury to person or to personal property ... shall be presented ... not later than six months after the accrual of the cause of action." Cal. Gov't. Code § 911.2(a). Assuming plaintiff were to receive 127 days of tolling while he filed his inmate appeals, he would needed to have filed a claim with the GCA by August 30, 2010. Plaintiff's request to file a late claim with the GCA was received on December 27, 2010, beyond even a tolled time

period.[6] For all these reasons, and as plaintiff has failed to provide additional facts or case law, plaintiff should not receive equitable tolling.

ADA Dismissal

        Defendant Yassine was expressly sued only in his individual capacity, and hence, is an improper party for purposes of an ADA claim. See Complaint . However, for purposes of the Motion to Dismiss, the undersigned assumed that the complaint could be amended to substitute the State of California as the proper ADA defendant, and assumed (with some doubt) that had Yassine (a relatively low level CDC corrections officer) been sued in his official capacity, such might have sufficed as well. The undersigned went on to reach the merits of the ADA claim. Plaintiff argued that defendant's search of plaintiff in his wheelchair, instead of using a nearby ADA compliant bench was a violation of the ADA. Plaintiff also stated that defendant searched plaintiff without a supervisor present was in violation of the Armstrong consent decree.[7]

        Plaintiff cannot sue for damages in this case for violation of a consent decree issued in another district; he can only sue for Title II ADA violations, i.e., assuming the consent decree was violated, it does not necessarily mean that Title II of the ADA was violated. Plaintiff has failed to allege, *given the factual context,* that the search in his wheelchair, as opposed to a bench, had anything do with the ADA. Title II of the ADA "prohibit[s] discrimination on the

---

[6] Nor should plaintiff be allowed to receive tolling and the discretionary six month time period to file a late claim. Whether a late administrative claim can be filed if one files an administrative claim in the six month period after the limitations period expired is a matter committed to the discretion of state administrative authorities. Only the limitations period itself can be equitably tolled by courts; the late filing forgiveness for state administrative claims must be dispensed by state authorities.

[7] Armstrong refers to a remedial order issued in Armstrong v. Davis, No. CV 94–2307–CW, by the District Court for the Northern District of California to enjoin practices that discriminated against disabled inmates in California Prisons. See generally Armstrong v. Davis, 275 F.3d 849 (9th Cir. 2001); Armstrong v. Wilson, 124 F.3d 1019 (9th Cir. 1997) (affirming order requiring submission of a remedial plan for CDCR's compliance with both the Americans with Disabilities Act, 42 U.S.C. §§ 12131–34, as well as the Rehabilitation Act of 1973, 29 U.S.C. § 749).

basis of disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). Title II provides that "no qualified individual with a disability shall, *by reason of such disability*, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Title II of the ADA applies to inmates within state prisons. Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 118 S.Ct. 1952, 1955 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997); Duffy v. Riveland, 98 F.3d 447, 453-56 (9th Cir. 1996).

In order to state a claim that a public program or service violated Title II of the ADA, a plaintiff must show: he is a "qualified individual with a disability"; he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and such exclusion, denial of benefits, or discrimination was *by reason of his disability*. McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004).

In Simmons v. Navajo County, Ariz., 609 F.3d 1011 (9th Cir. 2010), the Ninth Circuit did not find a violation of the ADA after an inmate, diagnosed with depression, committed suicide at a county jail because he was allegedly denied access to outdoor recreation or transfer to a different facility. Id., at 1022. The Circuit noted that the inmate needed to show that he was denied outdoor recreation by reason of his depression. Id., at 1021. It was further stated:

> Moreover, even assuming that transfer to some other prison facility might have been a reasonable accommodation, there is no evidence that such a transfer was ever sought or denied, let alone that such denial was because of or motivated by [the inmate's] depression. Likewise, assuming that [the inmate] could have been housed in some other room in the Navajo County Jail, there is no evidence that the County's failure to do so was motivated by his depression.

Id., at 1022.

Similarly, in the instant case plaintiff has failed to show that Yassine's search of plaintiff in his wheelchair, instead of on a bench, was motivated by plaintiff's disability. Indeed,

8

he affirmatively alleges that the search was motivated by officer's taking offense at an impertinent inmate's refusal to answer questions. Nor, similarly to the situation in Simmons, did plaintiff ever request to be searched on a bench instead of in his wheelchair. Moreover, there are no allegations that Yassine usually searched other wheelchair bound inmates using a bench, or plaintiff had always been searched in the past using a bench and requested such, or that Yassine made any statements that he would search plaintiff in his wheelchair to deny him use of the bench. By all accounts, the entire incident happened very quickly, and each side accused the other of losing their temper and acting inappropriately. As the undersigned stated in the Findings and Recommendations, it appears both parties were in a spite contest with one another, but this fails to show any discrimination due to a disability.

"To recover monetary damages under Title II of the ADA..., a plaintiff must prove *intentional discrimination on the part of the defendant,*" Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001) (emphasis added). Thus, the mere objective violation of the ADA (or an ADA consent decree), here the failure to use a bench, is insufficient. The context of the case must in some way demonstrate that the acts taken by a defendant were purposefully designed to avoid ADA accommodation obligations known to the defendant, i.e., a deliberate indifference standard. Id. Construing this action as a violation of the ADA would transform all untoward actions committed by guards against disabled inmates as violations of the ADA. If, for example, for no bona fide reason, a guard punches an inmate who happens to be using crutches, then the guard has most likely violated the Eighth Amendment, but failing to provide the inmate a chair before assaulting him does not raise an ADA claim.

Because the alleged facts of this case do not touch upon the state of mind necessary to encompass a Title II ADA claim, and cannot be fairly stated given the alleged context of the encounter, made under penalty of perjury by plaintiff in his complaint, the conduct in this case does not demonstrate an intentional violation of the ADA. Plaintiff may still file objections to the January 6, 2012, Findings and Recommendations.

1       Accordingly, IT IS HEREBY ORDERED that plaintiff's motion for reconsideration (Doc. 54) is granted, but upon reconsideration, the undersigned affirms his initial Findings and Recommendations.

      Within fourteen days after being served with this order, any party may file written objections to the initial Findings and Recommendations, and this Order on Reconsideration to the Magistrate Judge, and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations and Order on Reconsideration." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 28, 2012

      /s/ Gregory G. Hollows
      UNITED STATES MAGISTRATE JUDGE

GGH: AB
bark0246.recon