1

2

3

4

5

6

7               IN THE UNITED STATES DISTRICT COURT

8             FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10

11  WILLIAM BARKER,

12              Plaintiff,              No. 2:11-cv-0246 LKK AC P

13        vs.

14  R. YASSINE,

15              Defendant.              <u>FINDINGS and RECOMMENDATIONS</u>

16  _____/

17              Plaintiff is a state prisoner proceeding with counsel on his first amended

18  complaint filed pursuant to 42 U.S.C. § 1983.  Plaintiff, who is prescribed a wheelchair when out

19  of his cell, alleges that defendant, a correctional officer at CSP-Solano, violated his rights in the

20  course of conducting a search at a barrier gate on October 25, 2009.  Plaintiff alleges violations

21  of his Eighth Amendment rights, as well as the Americans with Disabilities Act (the "ADA"),

22  the Rehabilitation Act (the "RA"), the state Unruh Civil Rights Act (the "UCRA") and the state

23  Disabled Person's Act ("DPA") (collectively, "the disability claims").  Plaintiff seeks money

24  damages.

25              Defendant has answered the Eighth Amendment portion of the Complaint, and

26  now moves to dismiss the disability claims pursuant to Federal Rule of Civil Procedure 12(b).

                                          1

Plaintiff filed an untimely objection to the motion, to which he attaches a proposed second amended complaint.  On March 27, 2013, after a hearing, the court took the matter under submission.

*Procedural History*

The action was originally filed on January 26, 2011 as a pro se complaint.  ECF No. 1.  Plaintiff alleged that he was a disabled prisoner, and that the sole defendant, Correctional Officer ("CO") Yassine, violated the Eighth Amendment, the ADA, and various state statutes when he searched plaintiff at a barrier gate while plaintiff was on his way from the yard to the B-1 Clinic for respiratory therapy.  Id. at 5-7.  On February 25, 2011, Magistrate Judge Hollows, to whom this action was previously assigned, granted plaintiff's application to proceed in forma pauperis and found that service was appropriate for defendant Yassine.  ECF No. 7.

On July 27, 2011, defendant filed his first motion to dismiss on the ADA and state law claims (ECF No. 25) as well as his first answer on the Eighth Amendment claims (ECF No. 27).  On August 23, 2011, the court set discovery and dispositive motion deadlines in the case:  all discovery was to be completed by November 18, 2011, and all dispositive motions were to be filed by February 10, 2012.  ECF No. 32.

On October 13, 2011, plaintiff filed a pro se motion to amend his complaint, (ECF No. 42), which Magistrate Judge Hollows denied on October 19, 2011, directing that plaintiff instead respond to the motion to dismiss.  ECF No. 44.  Plaintiff filed his pro se opposition on November 14, 2011.

On October 26, 2011, Magistrate Judge Hollows appointed counsel for plaintiff for the limited purpose of representing plaintiff at his deposition.  ECF No. 46.  On December 8, 2011, counsel requested that counsel be substituted in as counsel for the plaintiff.  ECF No. 52.  Attached to the substitution motion was a new opposition to the motion to dismiss as well as an amended complaint.  Id.

On January 6, 2012, Magistrate Judge Hollows issued findings and

2

1    recommendations that the motion to dismiss be granted.  ECF No. 53.  Magistrate Judge Hollows

2    considered the additional opposition, and analyzed the amended complaint, but disregarded it,

3    finding that it failed to state a colorable ADA claim.  Id.

4           Plaintiff moved for reconsideration of Magistrate Judge Hollows' ruling.  ECF

5    No. 54.  Defendant then moved for summary judgment on the Eighth Amendment and ADA

6    claims, and also argued that defendant was entitled to qualified immunity.  ECF No. 56.

7    Magistrate Judge Hollows conducted a hearing on both motions on March 15, 2012, and took the

8    matter under submission.  ECF No. 62 (Minutes filed March 15, 2012), ECF No. 66 (transcript

9    filed April 16, 2012).

10          Magistrate Judge Hollows never issued findings and recommendations on the

11   summary judgment motion.  Instead, on September 4, 2012, Judge Karlton issued an order on the

12   pending findings and recommendations that the motion to dismiss be granted.  ECF No. 68.

13   Judge Karlton did not accept or reject the findings, ruling instead the plaintiff should be allowed

14   to amend his complaint as he had asked to do when counsel substituted in.  Id.

15          On September 6, 2012, Magistrate Judge Hollows vacated the motion for

16   summary judgment.  ECF No. 69.  On September 26, 2012 plaintiff again moved to amend his

17   complaint (ECF No. 70), and Magistrate Judge Hollows granted the motion on October 17, 2012

18   (ECF No. 73).  Magistrate Judge Hollows directed that any responsive pleading be filed within

19   28 days.  ECF No. 73.  The current motion to dismiss and answer followed.  ECF Nos. 74, 75.

20          *Plaintiff's Factual Allegations*

21          The facts are taken from the proposed Second Amended Complaint ("SAC").[1]

22

23   _____

      [1] In plaintiff's opposition to the motion to dismiss, to which plaintiff attached his Second
24   Amended Complaint, plaintiff asked "the court to deny the defense's motion to dismiss but allow
     [plaintiff] to file a second amended complaint. . . ."  ECF No. 80 at 8; 14.  The operative
25   complaint in this action remains the first Amended Complaint (ECF No. 72-1); however,
     plaintiff provides additional factual and legal allegations in his proposed Second Amended
26   Complaint that do not appear in the operative First Amended Complaint.  Because defendant has
     moved to dismiss and plaintiff has requested further leave to amend, the undersigned will

                                                     3

1    Plaintiff is a prisoner at the California Medical Facility ("CMF") in Vacaville.  He

2 was classified as "DPO" under the Armstrong Consent Decree, as an inmate who does not

3 require a wheelchair full-time but is medically prescribed a wheelchair for use outside his cell.

4 The DPO designation entitles him to a lower bunk and wheelchair-accessible paths of travel.

5 SAC, ¶¶ 2-3.

6    On October 25, 2009, plaintiff was traveling by wheelchair from the yard to the

7 B-1 clinic for his daily scheduled respiratory therapy.  SAC, ¶ 14.  After plaintiff presented his

8 CDCR inmate identification card and his movement pass to the B-1 clinic, defendant asked

9 plaintiff why he was going to the clinic.  Id. at ¶¶ 15-18.  Plaintiff "felt harassed, and told

10 [defendant] that he would refuse to give the information because [plaintiff] believed its

11 confidentiality to be protected under the law."  Id. at ¶ 19.  Defendant became upset with

12 plaintiff, and ordered plaintiff to the wall by an elevator.  Id. at ¶ 20.  Plaintiff complied with

13 defendant's order.  Id.  Defendant then told plaintiff that "[defendant] would search [plaintiff]

14 because [plaintiff] did not explain why he wanted to be seen by the B-1 clinic medical staff."  Id.

15 at ¶ 21; see also ECF No. 1 at 14.

16    Defendant then searched plaintiff while plaintiff was seated in his wheelchair,

17 asking plaintiff to lean forward.  Id. at 22.  Unsatisfied with plaintiff's compliance, defendant

18 pushed plaintiff forward in his chair.  Id. at ¶ 23.  Plaintiff cried out in pain, informing defendant

19 that he suffered from back pain that restricted his movements.  Id. at 24.  Defendant ignored

20 plaintiff's pleas, and continued to push his back until plaintiff's back emanated a loud "pop"

21 sound.  Id. at ¶ 25.  Defendant then activated his personal alarm, summoning staff.  Id. at ¶ 29.

22 Staff arrived and "found [plaintiff] injured and in obvious pain, then left."  Id.  Plaintiff was

23 taken to the B-1 clinic.  Id. at ¶ 30.

24    At the clinic, a nurse filled out an injury report and plaintiff was seen by Dr.

25

26 consider the facts and legal analysis provided by plaintiff in his proposed Second Amended
Complaint.

1   Roxanne Sanders.  Id. at ¶ 31.  Dr. Sanders prescribed pain killers and an ice pack for the

2   injuries.  Id.  Plaintiff was again treated for his injuries on October 28, 2009, but the SAC does

3   not disclose what treatment he received on that day or thereafter.  Id. at ¶ 32.

4         On November 9, 2009, plaintiff filed a 602 grievance which reads "[t]his is a

5   complaint against staff within the meaning of Administrative Bulletin #97/10; C.C.R. § 3391 &

6   Penal Code § 832.5." ECF No. 1 at 10-15.[2]  The warden's response, dated November 18, 2009,

7   reads: "Appeal Issue: Whether or not Correctional Officer Yassine violated policy by utilizing

8   excessive or unnecessary force on Inmate Barker on 10-25-09." ECF No. 1 at 12.  The response

9   further reads that a review is being conducted by the Use of Force Review Committee, and that

10  the review is not yet complete.  Id.  On March 26, 2010, plaintiff's grievance appeal was denied

11  at the Director's Level.  See also ECF No. 75-1 at 10 (Decl. Of J.D. Lozano, Ex. B); ECF No. 1

12  at 18-19.

13        On December 27, 2010, plaintiff filed an untimely claim with the California

14  Victim Compensation and Government Claims Board ("VCGCB").  ECF No. 1 at 34-37.[3]  The

15  VCGCB subsequently returned plaintiff's claim to him, advising that he did not submit his claim

16  within one year of the incident.  Id.  Plaintiff does not allege compliance with the Tort Claims

17  Act in any of his complaints.

18        On January 26, 2011, plaintiff filed his original complaint.

19        *Plaintiff's Legal Claims*

20        The following legal claims are taken from plaintiff's proposed Second Amended

21  Complaint.

22

23  —————————————

24      [2]  A copy of the grievance is attached to plaintiff's original complaint, but not to his
    amended complaints, or to the motion to dismiss.

25

26      [3]  A copy of the claim, dated November 5, 2010, is attached to the original complaint, but
    not to his amended complaints, or to the motion to dismiss.

Plaintiff's disability and ADA-related claims[4] are based on the allegation that defendant Yassine (and possibly by extension defendants State of California and CDCR), refused plaintiff a reasonable accommodation during the search "once it became obvious that [plaintiff] had a qualified disability and was entitled to such an accommodation." ECF No. 80-1 at 9-10, ¶¶ 41, 47, 50, 53. Specifically, plaintiff alleges that defendant did not search plaintiff under the direction of the supervisor-in-charge, or on a special ADA-compliant bench. See SAC, ¶¶ 26-36.

According to plaintiff, "[s]tandard CDCR and CMF protocol requires the use of an ADA-compliant bench to search disabled inmates. ADA compliant benches are substantially larger than wheelchair seats – i.e., 24 inches x 48-inches compared to 12-inches x 12-inches. Eight times larger (by area) than his wheelchair seat, there would have been no leaning, or other strenuous acts, to search behind [plaintiff] if [defendant] had used the proper bench." Id. at 27. Plaintiff does not provide any citation to this CDCR or CMF protocol.

Plaintiff also quotes from the remedial plan set forth in the Armstrong class action (a copy of which plaintiff does not attach to his first or second amended complaint) arguing that the plan required defendant to use reasonable accommodations under the direction of the supervisor in charge. See ECF No. 80-1, ¶ 28 (relevant text of Armstrong Remedial Plan). The quoted portions of the Plan read, among other things, that "[i]nmates who use wheelchairs and who have severe mobility impairments and are unable to perform standard unclothed body search maneuvers shall be afforded reasonable accommodation to ensure a through search. . . ." Id. Plaintiff does not explain if, or how, a violation of the Armstrong consent decree is a violation of the ADA or the RA.

Plaintiff further alleges that, in violating his rights under the ADA, defendant also violated the CDPA and the UCRA. See ECF No. 80-1 at ¶¶50, 53.

*The Motion to Dismiss*

---

[4] These findings and recommendations do not address the plaintiff's Eighth Amendment claim because defendant has answered it, and has not sought to dismiss it in this motion.

1    Defendant raises three arguments in his motion to dismiss: (1) the ADA claims

2  must be dismissed, as plaintiff failed to exhaust his administrative remedies before filing this

3  action; (2) plaintiff's state claims under the UCRA and the DPA must be dismissed, because

4  plaintiff failed to file a timely Tort Claims Act claim before filing this action; and (3) plaintiff's

5  ADA and RA claims must be dismissed, as plaintiff has failed to plead that defendant

6  discriminated against plaintiff on account of plaintiff's disability, a necessary element of any

7  ADA claim.

8    Plaintiff objects.  As to the exhaustion argument, plaintiff alleges that his

9  grievance was sufficient to place prison officials on notice that he was raising an ADA claim.

10  As to the tort claims argument, plaintiff alleges that the state law requirement that he first present

11  a Tort Claims Act claim before proceeding on his state disability claims is preempted by the

12  Prison Litigation Reform Act's requirement that he exhaust his federal ADA claim.  As to the

13  insufficiency of his pleadings, plaintiff asks that the court allow him to file a second amended

14  complaint.

15    In his opposition, plaintiff draws his "undisputed and disputed facts" from

16  defendant's motion for summary judgment, and plaintiff's opposition thereto.  See ECF No. 80

17  at 2, citing to ECF Nos. 56 and 58.  As noted above, that motion had previously been vacated by

18  Magistrate Judge Hollows.

19    *Analysis*

20    <u>*Dismissal for Failure to State a Claim*</u>

21    A complaint must contain more than a "formulaic recitation of the elements of a

22  cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the

23  speculative level."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  "The pleading

24  must contain something more . . . than . . . a statement of facts that merely creates a suspicion

25  [of] a legally cognizable right of action."  <u>Id.</u>, quoting 5 C. Wright & A. Miller, Federal Practice

26  and Procedure 1216, pp. 235-235 (3d ed. 2004).  "[A] complaint must contain sufficient factual

1    matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>,

2    556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570).  "A claim has facial plausibility

3    when the plaintiff pleads factual content that allows the court to draw the reasonable inference

4    that the defendant is liable for the misconduct alleged."  <u>Id.</u>

5           A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

6    challenges the sufficiency of the pleadings set forth in the complaint.  <u>Vega v. JPMorgan Chase</u>

7    <u>Bank, N.A.</u>, 654 F.Supp.2d 1104, 1109 (E.D.Cal.2009).  Under the "notice pleading" standard of

8    the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

9    plain" statement of plaintiff's claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); <u>see</u>

10   <u>also</u> <u>Paulsen v. CNF, Inc.</u>, 559 F.3d 1061, 1071 (9th Cir. 2009), <u>cert. denied</u>, __ U.S. __, 130

11   S.Ct. 1053 (2010).  "A complaint may survive a motion to dismiss if, taking all well-pleaded

12   factual allegations as true, it contains 'enough facts to state a claim to relief that is plausible on

13   its face.'" <u>Coto Settlement v. Eisenberg</u>, 593 F.3d 1031, 1034 (9th Cir. 2010) <u>quoting</u> <u>Iqbal</u>, 556

14   U.S. at 678.  "'A claim has facial plausibility when the plaintiff pleads factual content that

15   allows the court to draw the reasonable inference that the defendant is liable for the misconduct

16   alleged.'" <u>Caviness v. Horizin Cmty. Learing Ctr., Inc.</u>, 590 F.3d 806, 812 (9th Cir. 2010)

17   <u>quoting</u> <u>Iqbal</u>, 556 U.S. at 678.  The court accepts all of the facts alleged in the complaint as true

18   and construes them in the light most favorable to the plaintiff.  <u>Corrie v. Caterpillar</u>, 503 F.3d

19   974, 977 (9th Cir. 2007).  The court is "not, however, required to accept as true conclusory

20   allegations that are contradicted by documents referred to in the complaint, and [the court does]

21   not necessarily assume the truth of legal conclusions merely because they are cast in the form of

22   factual allegations."  <u>Paulsen v. CNF, Inc.</u>, 559 F.3d at 1071 (citations and quotation marks

23   omitted).

24          In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may

25   generally consider only allegations contained in the pleadings, exhibits attached to the

26   complaint, and matters properly subject to judicial notice."  <u>Outdoor Media Group, Inc. v. City</u>

of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted); see also Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 980 n. 18 (9th Cir. 1999) ("When considering a motion for judgment on the pleadings, [the] court may consider facts that are contained in material of which the court may take judicial notice.") (citation and quotation marks omitted).

*Plaintiff Fails to State a Claim under the UCRA and the DPA*

Plaintiff's state law claims under the UCRA and the DPA should be dismissed because plaintiff failed to file a timely tort claim with the state, and has therefore failed to state a claim upon which relief can be granted.

The Government Tort Claims Act ("TCA") requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950–950.2 (West 2011).  Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit.  State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234, 1240 (2004);  Shirk v. Vista Unified School District, 42 Cal.4th 201, 209 (2007).  Compliance with the Tort Claims Act is an element of the cause of action, Bodde, 32 Cal.4th at 1240, is required, Mangold v. California Public Utilities Com'n, 67 F.3d 1470, 1477 (9th Cir. 1995), and therefore "failure to file a claim is fatal to a cause of action," Hacienda La Puente Unified School Dist. Of Los Angeles v. Honig, 976 F.2d 487, 495 (9th Cir. 1992); City of Stockton v. Superior Court, 42 Cal.4th 730,738 (2007).  "California statutes or ordinances which condition the right to sue the sovereign upon timely filing of claims and actions are ... *elements of the plaintiff's cause of action* and conditions precedent to the maintenance of the action." Bodde, 32 Cal.4th at 1240 (quoting Williams v. Horvath, 16 Cal.3d 834, 840 (1976)).

While a violation of the ADA may also constitute a violation of the UCRA and the DPA, plaintiff must allege that he has exhausted his state administrative remedies in order to

1  state a colorable tort claim under California law.  See Bodde, 32 Cal.4th at 1244; Wills v.

2  Reddin, 418 F.2d 702, 704-05 (9th Cir. 1969) (California laws conditioning right to sue the

3  sovereign upon timely filing of claims and actions are elements of plaintiff's cause of action and

4  conditions precedent to maintenance of the action).  Failure to allege exhaustion is an

5  appropriate basis for demurrerr failure to state a claim.  Id.  The requirement that a plaintiff

6  asserting claims subject to the TCA must affirmatively allege compliance with the claims filing

7  requirement applies in federal court as well.  Karim-Panahi v. Los Angeles Police Dep't, 839

8  F.2d 621, 627 (9th Cir. 1988).

9          In this case, plaintiff does not contend that he timely complied with the state

10  exhaustion procedures, nor does he attempt to excuse his noncompliance "by alleging an

11  appropriate excuse, such as equitable estoppel."  Id. at 123.[5]  Plaintiff instead argues that the

12  administrative exhaustion of his ADA claim required by the Prison Litigation Reform Act

13  (PLRA)[6] "preempts" the need to submit a TCA claim regarding violations of the UCRA and

14  DPA.  "Barker does not have to file a government claim in a state law claim based entirely on

15  ADA violations because the federal ADA preempts provisions of state laws that afford less

16  protection to the disabled."  ECF No. 80 at 9.  In essence, plaintiff contends that because he is a

17  prisoner subject to the PLRA's exhaustion requirement for his federal law claims, he need not

18  comply with the separate requirement that California's Government Tort Claims Act imposes on

19  prisoners and non-prisoners alike for parallel state law claims.

20          The fact that plaintiff's UCRA and DPA claims arise from the same incident that

21  gives rise to his ADA claim does not transform his state law causes of action into federal claims

22  subject only to federal claim prerequisites under the PLRA.  On the contrary, the state and

23  federal statutes create independent avenues for relief, each with its own procedural

24  _____

25      [5]   Plaintiff did file an untimely claim in December 2010.

26      [6]   42 U.S.C. § 1997e(a).

10

1   requirements.[7]  It is the law of the circuit that failure to comply with the claim-filing

2   requirements imposed by the state Torts Claims Act bars pendent state claims in the federal

3   courts.  Karim-Panahi, 839 F.2d at 627 (citing Ortega v. O'Connor, 764 F.2d 703, 303 (9th Cir.

4   1985)).  Plaintiff has identified no exception to this rule.

5            The cases cited by plaintiff in his motion, Hubbard v. SoBreck, LLC, 554 F.3d

6   742 (9th Cir. 2009), and O'Campo v. Chico Mall LP, 758 F. Supp. 2d 976, 984-85 (E.D. Cal.

7   2010), do not assist him.  As previously noted by Magistrate Judge Hollows,

8            Hubbard involved a situation where both a federal ADA and state
         CDPA (California Disabled Persons Act) attorneys' fees
9            provisions conflicted.  In a situation where both claims were
         brought in federal court, the ADA was held to preempt the more
10           defendant friendly CDPA provisions.  Plaintiff's counsel takes that
         correct proposition and applies it to a situation where the federal
11           ADA has no exhaustion provisions to conflict with state
         requirements.  Plaintiff argues, without authority, that the general
12           federal requirement in PLRA litigation (prisoner must exhaust
         remedies within the prison) has somehow been engrafted onto the
13           ADA, and therefore, the newly found ADA "exhaustion provision"
         "conflicts" with GCA filing requirements.  However, the premise
14           that the ADA contains an exhaustion provision, which it does not,
         is incorrect.  Prisoner litigation requires PLRA exhaustion no
15           matter the claim – and that requirement has nothing to do with
         whether the ADA has an exhaustion requirement. . . .

16
         Further, O'Campo does not aid plaintiff.  "The Act [state law] is
17           preempted to the extent that it imposes any additionally procedural
         hurdles to a plaintiff *bringing a claim under the ADA*."  O'Campo,
18           758 F. Supp. 2d at 984.  The case did not hold that mandatory
         requirements for bringing state claims, unrelated to one's ability to
19           proceed under the ADA, were unenforceable.

20   ECF No. 53 at 7-8.

21            In short, plaintiff has failed to comply, and to allege compliance, with the state's

22

23        [7]  No preemption issue is presented here, where no party contends either that the ADA
     occupies the disability rights field (which would negate plaintiff's UCRA and DPA claims
24   altogether) or that the state and federal disability laws conflict.  See Cal. Fed. Sav. & Loan Ass'n
     v. Guerra, 479 U.S. 272, 280-81 (1987) (discussing preemption principles).  The "conflict" that
25   plaintiff purports to identify here is between the exhaustion requirement of the PRLA and the
     tort claims presentation requirement of the California statute.  There is no conflict, however, as
26   the procedural requirements imposed by those statutes apply to different causes of action.

1  Tort Claims Act and accordingly has failed to state a cause of action for violations of the state

2  disability laws.  His claims for damages pursuant to the UCRA and the DPA must be dismissed

3  for failure to state a claim.[8]  The claims should be dismissed with prejudice, as plaintiff is no

4  longer able to file a timely claim under the TCA.  Because plaintiff is unable to cure his current

5  defect, any proposed amendment would be futile.  See, e.g., Gardner v. Martino, 563 F.3d 981,

6  990 (9th Cir. 2009), quoting Chaset v. Fleer/Skybox Int'l, LP, 300 F.3d 1083, 1088 (9th Cir.

7  2002) ("When a proposed amendment would be futile, there is no need to prolong the litigation

8  by permitting further amendment.").

9  *Plaintiff Has Failed to Exhaust His ADA and RA Claims*

10  Plaintiff's ADA and RA claims should also be dismissed because they have not

11  been exhausted.  Instead, the record reflects that plaintiff's original appeal requested action on

12  account of staff misconduct (use of excessive force), and it was on this allegation that the appeal

13  proceeded.  There is nothing in the record to reflect that plaintiff sought to amend his appeal to

14  include the failure to search him in compliance with the special procedures that apply to disabled

15  persons, or to question why his (allegedly pled but ignored) disability-related claim had not been

16  addressed.

17  *Exhaustion*

18  Relevant Authority

19  Congress "placed a series of controls on prisoner suits, constraints designed to

20  prevent sportive filings in federal court."  Skinner v. Switzer, __ U.S. __, 131 S.Ct. 1289, 1299

21  (2011).  One of these constraints is the mandatory exhaustion of the correctional facilities'

22  administrative remedies.  See 42 U.S.C. § 1997e(a); Jones v. Bock, 549 U.S. 199, 211 (2007)

23  ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted

24

25  _____
     [8]   The court may decide defendant's motion to dismiss for failure to state a claim even
     without reference to the exhibits attached to the original complaint, as plaintiff has failed to
     allege compliance with the Tort Claims Act in his first and second Amended Complaints.  See
26  ECF Nos. 72-1 at 8-10; 80-1 at 9-10.

1   claims cannot be brought in court.").

2         Exhaustion serves two purposes.  Woodford v. Ngo, 548 U.S. 81, 89 (2006).

3   First, exhaustion protects administrative agency authority.  Exhaustion gives an agency an

4   opportunity to correct its own mistakes with respect to the programs it administers before it is

5   haled into federal court, and it discourages disregard of the agency's procedures.  Second,

6   exhaustion promotes efficiency. Claims generally can be resolved much more quickly and

7   economically in proceedings before an agency than in litigation in federal court.  Id. (internal

8   quotation marks, alteration, and citations omitted).

9         The Prison Litigation Reform Act of 1995 (PLRA) mandates that "[n]o action

10   shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal

11   law, by a prisoner confined in any jail, prison, or other correctional facility until such

12   administrative remedies *as are available* are exhausted."  42 U.S.C. § 1997e(a) (emphasis

13   added).  Although "the PLRA's exhaustion requirement applies to all inmate suits about prison

14   life," Porter v. Nussle, 534 U.S. 516, 532 (2002), the requirement for exhaustion under the

15   PLRA is not absolute.  See Albino v. Baca, 697 F.3d 1023, 1030-31 (9th Cir. 2012).  As

16   explicitly stated in the PLRA, "[t]he PLRA requires that an inmate exhaust only those

17   administrative remedies 'as are available.'" Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010)

18   (quoting 42 U.S.C. § 1997e(a)); see also Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010)

19   ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing

20   their purposes and so are not available."). "We have recognized that the PLRA therefore does

21   not require exhaustion when circumstances render administrative remedies 'effectively

22   unavailable.'" Sapp, 623 F.3d at 822 (citing Nunez, 591 F.3d at 1226); accord Brown v. Valoff,

23   422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as

24   long as *some* remedy remains 'available.' Once that is no longer the case, then there are no

25   'remedies ... available,' and the prisoner need not further pursue the grievance." (alteration in

26   original)).

1    Exhaustion is an affirmative defense under the PLRA.  Jones, 549 U.S. at 216.

2  Accordingly, "[t]he burden of establishing nonexhaustion therefore falls on defendants." Wyatt,

3  315 F.3d 1108, 1112 (9th Cir. 2003); accord Brown, 422 F.3d at 936 ("[D]efendants have the

4  burden of raising and proving the absence of exhaustion.") (quoting Wyatt, 315 F.3d at 1119)

5  (internal quotation marks omitted). Once the defense meets its burden, the burden shifts to the

6  plaintiff to show that the administrative remedies were unavailable.  See Albino, 697 F.3d at

7  1030-31; Hilao v. Estate of Marcos, 103 F.3d 767, 778 n. 5 (9th Cir. 1996).

8    A defendant's burden of establishing an inmate's failure to exhaust is very low.

9  See Albino, 697 F.3d at 1031.  A defendant need only show the existence of remedies that the

10 plaintiff did not use.  Id.  Relevant evidence in so demonstrating would include statutes,

11 regulations, and other official directives that explain the scope of the administrative review

12 process.  Id. at 1032.

13    A prisoner must exhaust his administrative remedies before filing suit under 42

14 U.S.C. § 1983.  See 42 U.S.C. § 1997e(a).  However, "exhaustion is not per se inadequate simply

15 because an individual later sued was not named in the grievances."  Jones v. Bock, 549 U.S.199,

16 219, 127 S.Ct. 910, 922 (2007).  "The level of detail in an administrative grievance necessary to

17 properly exhaust a claim is determined by the prison's applicable grievance procedures."  Jones,

18 549 U.S. at 218.  In California, prisoners are required to lodge their administrative complaint on

19 a CDC Form 602, which requires only that the prisoner "describe the problem and action

20 requested."  Cal.Code Regs. tit. 15, § 3084.2(a).  In Griffin v. Arpaio, 557 F.3d 1117 (9th

21 Cir.2009), the Ninth Circuit Court of Appeals adopted the standard enunciated by the Seventh

22 Circuit, which provides that "when a prison's grievance procedures are silent or incomplete as to

23 factual specificity, 'a grievance suffices if it alerts the prison to the nature of the wrong for which

24 redress is sought.' "  Griffin, 557 F.3d at 1120 (reviewing Arizona procedures), quoting Strong

25 v. David, 297 F.3d 646, 650 (7th Cir.2002).  Thus, in California, "[a] grievance need not include

26 legal terminology or legal theories unless they are in some way needed to provide notice of the

1   harm being grieved. A grievance also need not contain every fact necessary to prove each

2   element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a

3   problem and facilitate its resolution, not to lay groundwork for litigation." Griffin, 557 F.3d at

4   1120; accord, Morton v. Hall, 599 F.3d 942, 946 (9th Cir. 2010).

5          In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the

6   court may look beyond the pleadings and decide disputed issues of fact. Wyatt, 315 F.3d at

7   1119-20. No presumption of truthfulness attaches to a plaintiff's assertions associated with the

8   exhaustion requirement. See Ritza v. Int'l Longshoremen's and Warehousemen's Union, 837

9   F.2d 365, 369 (9th Cir. 1988). If the district court concludes that the prisoner has not exhausted

10  nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice. Id.

11          *The Original Grievance*

12          Plaintiff's original grievance, dated October 25, 2009, reads as follows:

13          A.  Describe Problem: This is a complaint against staff within the
            meaning of Administrative Bulletin #97/10; C.C.R. § 3391 &
14          Penal Code § 832.5. See attached sheet.

15          B.  Action Requested: Process this complaint according to the
            rules governing the above statute(s).
16
            (Signed) 10-25-09
17

18  ECF No. 1 at 10.

19          Also attached to the complaint, following the grievance form, are the following

20  documents: (1) a written statement from C/O G. Santos, dated "11-22-09 @ 1940" (id. at 11); (2)

21  a memorandum dated November 18, 2009 from Kathleen L. Dickinson, Warden, responding to

22  plaintiff's staff complaint (id. at 12) ("Warden's Response"); (3) a Personnel Complaint,

23  unsigned and undated, but stamped received in the inmate appeals office November 9, 2009,

24  naming plaintiff as complainant, and defendant Yassine as the "Personnel involved," (id. at 13);

25  (4) a "Continuation of Complaint @ Staff (602)," unsigned and undated, numbered 1 of 1, which

26  appears to be the "attached sheet" identified in plaintiff's original 602 described above (id. at

                                                15

14); (5) a "Rights and Responsibility Statement," signed by plaintiff on 10-25-09, and received

by staff on 11-25-09 (id. at 15); and (6) a Director's Level Appeal Decision, dated March 16,

2010, regarding plaintiff's October 25, 2009 grievance (id. at 18-19).

The continuation sheet for the 602 reads, in its entirety:

> October 25, 2009 at approx. 3:30 pm I was headed to B-1 clinic
> from the CMF yard, for my daily scheduled RESPIRATORY
> THERAPY.  As I approached the Unit 1 Grill Gate I showd [sic]
> my inmate I.D. card with the V-Wing sticker to C/O Yassine at the
> Unit 1 grill gate.  He, strange enough, asked for my destination.  I
> produced and showed him my movement pass and explained that I
> was headed to B-1 Clinic.  He then asked why I needed to go the
> B-1 Clinic, feeling HARASSES [sic] & SINGLED OUT, I stated
> he was not there to treat my medical condition, and that the
> information he was seeking was protected by state and federal
> statutes.

> C/O Yassine became visibly upset, and ordered me back to the
> wall near the window by the elevator door.  I complied.  Moments
> later, he approached me stating he was going to search me
> BECAUSE I DID NOT GIVE HIM A FULL ACCOUNTING OF
> MY NEED TO BE SEEN BY THE B-1 CLINIC MEDICAL
> STAFF.  As he began to search me, he asked me to lean forward in
> my WHEEL CHAIR.  I complied.  He began to PUSH ME
> FORWARD even more.  In pain I informed Yassine that I suffered
> from back pain problems that restricted my movement, Yassine
> ignored my pleas for restraint and proceeded to push me forward
> even further until a LOUD POP was heard and I cried out in pain.
> Yassine then and only then, activated his personal alarm.  When
> responding staff arrived he stated, "This inmate is causing a
> disturbance."

> C/O Yassine activated his alarm out of a self-serving attempt to
> cover up his misconduct by transferring the attention to me.  When
> responding staff arrived they found me both injured and in obvious
> pain.  Responding staff left, and I was taken to B-1 Clinic.  The
> nurse filled out an injury report and I was seen by [original ends
> mid-sentence.[9]]

ECF No. 1 at 14.

In order to alert prison officials to his disability discrimination and

accommodation claims, plaintiff would have to raise some concern that the manner in which he

___

[9]  The original bears the page number "1 of 1," indicating that the sentence did not
continue onto another page.

1   was searched was inappropriate to his being in a wheelchair.  The above language does not do

2   that – instead, a fair reading of the grievance notifies prison officials that plaintiff objected to the

3   force used during the search.  As described by plaintiff himself, he complied with defendant's

4   directions to lean forward in his wheelchair in order to be searched, made no objection to

5   defendant about being searched in the wheelchair, and only objected after the search became too

6   rough in light of plaintiff's back problems.

7           Additionally, while the undersigned is cognizant of plaintiff's pro se status at the

8   time the grievance was written, the liberal reading to which plaintiff is accordingly entitled must

9   be informed by plaintiff's demonstrated ability to grieve an ADA-type claim when he wished to

10  do so.  Accordingly, although the undersigned would not require plaintiff to use the word

11  "ADA" or specifically refer to the statute in order to exhaust his claim, the undersigned notes

12  that plaintiff had previously filed at least five prior appeals characterized as "ADA" by CDCR,

13  and that the original pro se complaint specifically refers to the ADA, as well as to state disability

14  statutes.  See ECF No. 75-1 at 6-7.  Additionally, plaintiff's grievance identified the specific

15  statutes under which plaintiff wanted his appeal considered, all of which refer to an non-inmate's

16  ability to file a civil complaint against staff.  See ECF No. 1 at 10.

17          It is also notable that plaintiff does not appear to have raised, at any level of his

18  appeal, an objection to the failure to address his alleged ADA claim.  See ECF No. 1 at 18; 75-1

19  at 10 (summary of plaintiff's arguments in Director's Level Appeal Decision).  Surely if plaintiff

20  had been attempting to grieve a violation of his rights as a disabled person, he would have

21  argued in subsequent appeals that a prior reviewer had failed to address the concern.  Cf. Cobb v.

22  Woodford, 2012 WL 3778949 *1 (N.D. Cal. Aug. 30, 2012).

23          In short, a liberal reading of plaintiff's original grievance reflects that plaintiff did

24  not place prison officials on notice that he wished to grieve his accommodation objection to the

25  search.  Under circuit law, plaintiff has failed to exhaust claims based on defendant's failure to

26  use an ADA-compliant bench or to call a supervisor when searching plaintiff.  Accordingly, the

undersigned recommends that the ADA and RA claims be dismissed with prejudice.  The PLRA requires "[p]roper exhaustion," which "demands compliance with an agency's deadlines and other critical procedural rules."  Woodford, 548 U.S. at 90-91.  "[F]iling an untimely or otherwise procedurally defective administrative grievance or appeal" does not satisfy the PLRA's exhaustion requirement.  Id. at 84.  CDCR's grievance procedures require an inmate to submit an appeal within 30 days of the incident being grieved.  See Cal. Code Regs. tit. 15, § 3084.8(b)(1).  Years have passed since the acts alleged in the complaint.  As the time to properly exhaust administrative remedies has long passed, the complaint should be dismissed with prejudice.

Because the undersigned recommends that the court dismiss the ADA and RA claims for failure to exhaust, the undersigned does not reach defendant's argument that plaintiff's ADA and RA claims fail to state a claim upon which relief can be granted.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion to dismiss (ECF No. 75) be granted; and

2. The action proceed only on plaintiff's Eighth Amendment claim against defendant Yassine (ECF No. 72-1 at ¶¶ 68-74).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-eight (28) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within twenty-eight (28) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the

////

////

////

18

1  right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

2  DATED: May 7, 2013

3

4  ALLISON CLAIRE
   UNITED STATES MAGISTRATE JUDGE

5

6

7  AC:rb/bark0246.fr

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

19